Arguments not to exceed 15 minutes per side. Mr. Moseley for the petitioner. Good morning, Your Honors. I would like to reserve four minutes for rebuttal. You may. May it please the Court, I'm Thomas Moseley, counsel for the petitioner, Mr. Stanovsek. In this case, Mr. Stanovsek, who was admitted to the United States on a non-immigrant visa and then later adjusted status to permanent residence, seeks very narrow relief in the form of statutory eligibility for a waiver under Section 212H of the Immigration Act, based upon the plain language of that statute and the language chosen by Congress, so that at least he will have the chance, the opportunity, to preserve his life in the United States with his U.S. citizen wife and six U.S. citizen children. We had this motion about allowing him to go to Australia to see his mother. Did that happen or not? That did indeed happen. He was removed on November 22nd with his mother. So is he currently in Australia? He is currently in Australia. If you won this case, he would have the opportunity to return. Yes, he would. He would be restored to permanent residence because if we succeed here, you would vacate the Board of Immigration Appeals decision that would restore him to lawful permanent residence. He could then return to proceed with his application in immigration court. At best, you would make the application for waiver and then that would be within the discretion? Right. The evaluation of hardship would be within the sound discretion of the immigration court. Those are pretty hard to get these days. It's a difficult standard, and we have to show extreme hardship. Admittedly, we have Australia as the country. We have, I believe, sufficient psychological and other family issues and economic issues as well. It's not before us. It's not before you, but it is hard. But by upholding or following our position here, you don't guarantee by any means that he gets. He's merely seeking a chance to apply. That's clear. Thank you. The limitation that Congress grafted upon that form of relief and the definitions that Congress enacted as part of IRA-IRA, we submit make him entitled to this because that limitation applies only, and Congress used specific language, only to those who were admitted to the status of an alien lawfully as a permanent resident. And Congress specifically defined admitted as entry after a lawful inspection. Mr. Stanovich did not get his permanent residence that way. He got it through adjustment of status. This language, pardon me, I don't know if it's questionable whether we should look at legislative history, but this language was sort of tinkered with in committee. Is that right? It was tinkered with in committee, and the way that it was tinkered with in committee. It was tinkered with so that the original bill passed in both houses didn't have it the way it came out of committee. Right. It was tinkered with to achieve its present form, and I think that's the— It's strange. I mean, you can argue that it makes sense to do this, but it's kind of a strained argument that this is a logical statute. Well, the issue, of course, obviously isn't necessarily logic as we might perceive it. It's the language that Congress— That's fine. My question goes to how did such an illogical thing get into the statute? It looks like somebody in the committee in the conference put that in there, and then it just got passed. Is that fair, or is that— I don't necessarily think that that's fair, but I think what we have to— Congress obviously doesn't enact legislative history. It exact enacts legislation. I understand that. I'm just puzzled as to how something that peculiar, something that peculiar would get into the statute. This particular statute imposed tremendous obligations and burdens upon the government in many areas, and I think, as certainly the case law suggests, the Martinez case and others that have adopted our position, that Congress was going to proceed in an incremental fashion, and that's ultimately what they did here. I understand, but it's kind of a peculiar increment. Well, it— If you think it's kind of a peculiar increment, then it seems to me what we're basically doing here is trying to figure out what to do with language which appears clear but which does something strange. Well, I don't think that it does something strange. What I think is that it narrowly defines the categories of people who are going to be excluded from this important form of relief. If Congress wants to change it, they have the opportunity to do that. But it's narrowly defined, as I think Judge Rogers has said, in a certain strange way because it acts to bar people who came in as lawful permanent residents, which would seem to be 100 percent upstanding, but it doesn't bar people who came in illegally, and it doesn't bar someone who comes in, as your client did, and adjusts within three months, but it does bar someone who comes in lawfully and has been here for six years, right, because there's the seven-year provision which applies to snare someone who enters as a lawful permanent resident, but wouldn't bar your client because he would have been— But, I mean, Congress could have—and we don't have to speculate about what Congress did or did not do in terms of the basis for what it did here. The government's position, litigation position, you don't have to find any rational basis for any of the distinctions. Here, as the courts that have upheld our position have said, Congress could have chosen to proceed incrementally. It could have. Am I right—I sort of rambled through there, but am I right about the way this seven-year part would work? That is, a person who enters as a lawful permanent resident commits a crime and is caught six years down the road, he's out no matter what because of the seven-year rule. He has no waiver right because— Judge Boggs, I don't disagree with you on that point. Interestingly, here enough, of course, Mr. Stanofsic did have seven years. Well, he did, but as a legal matter, he was adjusted within three months. So he could have committed the crime and been caught in the fourth month, and he would still not be barred. Yes, that is correct, but the statute may be overbroad, if you will, in terms of his case, but in terms of the other cases that we've cited of people who've been here after a long period of time— I've read the other cases you were counsel, and at least one of them has been very successful at this, and you've had people who have been of that sort. Let me take a slightly different tack because I've read all of the cases, and in several of them, even by the majority that's taken your side, you will find language like tortured language, awkward language, not just for the government's position but for the language as well. And I guess my question is whether doesn't that point toward an ambiguity in the words who has been previously admitted as an alien lawfully admitted, because when you adjust—help me here, but my reading is when you adjust, you are adjusted to the status of one who was lawfully admitted for permanent residence. What I think you have to focus upon here is we have two defined terms. We have two specific statutory definitions. One is admitted. The other statutory definition in 8 U.S.C. 1101A20 is lawfully admitted to the status of permanent residence. You become a permanent—that's the statutory basis for becoming a permanent resident. So isn't one way of reading that that the intention was, in effect, the reason for this weird language? I can almost see some staffers saying, oh, adjustment makes you nunk protunk like an LPR, so that's why we want to write it this way. If they wanted to encompass, Judge Boggs, all LPRs, they could have simply said that an alien lawfully admitted to permanent residence is barred if—but they didn't do that. They had a better staffer than they might have. Well, that may— Somebody said, well, but— That may well be. But even within roughly a year after the statute, Congress was going to amend it to, in effect, do what I just said they could have done, but they didn't do that. I mean, we— Sorry, give me that. Well— After IHRA was 96. 96. And then shortly after IHRA, as we point out in our brief, Lamar Smith, the godfather or father of this legislation, introduced legislation that would have amended the statute to, in effect, affect the government's position. And as, for example, the Martinez case, which relies somewhat on that, points out, that wasn't enacted. The real question here is, are we going to follow the plain language chosen by Congress? You may disagree with that language. Congress is free to amend it. But an administrative agency, I submit, is certainly not free to do that. And the other point that I think—well, a couple of other points here—is that cardinal rule of statutory construction. Avoid surplus. You cannot take a provision of a law and render it surplusage. And that's what the Board of Immigration Appeals' decision does here under these circumstances. I would also say that the construction—they eliminate the phrase previously admitted. I would also say that the construction that we're urging here, in light of the plain language, is fully consistent with this court's decision in Zhang, in a somewhat different context. But Zhang sharply distinguishes between admitted to permanent residence—admitted and— And defeats the government's argument that every adjustment is a new admission. Yes, exactly. That's at least in that context, right? At the— Let me, while your time is running, let me go back to that 1101A20, because you relied on that. And as I read it, lawfully admitted for permanent residence is the status of having been lawfully accorded the privilege. Right. So when you adjust, you achieve that status. You achieve that status. When you are— So therefore, you are a person lawfully admitted for permanent residence. So kind of one of the questions is, is it nook-pro-tunk? Is it meant to be, in some sense, nook-pro-tunk? No. The statute here, there are two ways to do this. You can be admitted, as defined, as a permanent resident, or you can adjust. The limitation that Congress enacted here applies only to those people who achieve that— That's focusing on the words previously— Previously admitted. Admitted. Right. Which you want to give it the sort of physical walking across the border as admission versus adjustment being admission in this section. The definition that Congress chose. Okay. Any other questions? I have a slight technical question. At the—whether it was a staff or whoever it was in the conference, which were the words that were dropped in, and which were the words that were already there? As I recall, Judge Rogers, it's the word admitted that was dropped in. The admitted is in both parts of it. No, but admitted to the status of alien lawfully admitted to permanent residence. The language is— It's the status words that were dropped in. No. It's the method by which the status was achieved that was dropped in. That was dropped in. I see my time is up. Good morning. May it please the Court. Kelly Walls for the Attorney General. The aggravated felony bar at Section 212H must apply to all lawful permanent residents, regardless of how they obtain status, in order to avoid inconsistencies within Section 212H itself. Applying the strict statutory definition of admission to Section 212H leads to the absurd result of excluding permanent residents in the United States from seeking this waiver. But so many courts have ruled against you. That's correct, right? That is correct, but— More than in your brief now. The seventh has joined the others. Basically, you're just trying to get a ticket to the Supreme Court. Well, actually, the argument I'm making today is one that none of the courts have actually considered in ruling that the plain language is— Maybe you should have made that argument to some of those courts. I would agree. This is the winning argument, and they haven't had a winning argument presented to them. Well, this is the problem, is that the courts that have accepted the plain language argument have only looked at how the plain language applies to the bar to the waiver, without looking how it actually affects the waiver itself. Right, but still in all, you're sort of coming up with arguments as you trudge through the circuits. Obviously, our litigation strategy has— We lost that one. Let's buy this one. We've had to change as the courts have ruled, and we're trying to adjust to what the other circuits are saying, knowing that that will be persuasive to this court. That's why we're saying, go beyond what the other courts have actually done and think about what it does to the waiver, not just the bar. Look at who's eligible for the waiver under the plain language analysis. If you look at page 27 of my brief, I have the respondents' brief. I have the statutory language quoted. And it specifically says that, for the waiver itself, not the bar, that the attorney general may in his discretion waive certain inadmissibility grounds in the case of an immigrant who is a spouse, parent, son or daughter of a U.S. citizen or lawfully admitted permanent resident, if it is established to the satisfaction of the attorney general that the alien's denial of admission would result in extreme hardship to the qualifying relatives. So they have to show that the denial of admission would result in hardship. If we apply the plain language analysis and use the strict statutory definition, that means that the alien applying for this waiver has to show that the denial of his lawful entry after inspection and authorization would cause hardship. That suggests that the waiver was only available to those aliens outside of the United States who can show that entry is going to cause hardship. He would, in our case, he's already been admitted, so you can't, in a sense, you can't deny him his retrospective admission back in, what, 19- What we're suggesting is, if you use the plain language that opposing counsel suggests, it contemplates that this waiver would be applied for by aliens outside of the United States, not aliens inside of the United States, aliens who are seeking to waive a ground of admission and admissibility in order to enter the United States by showing that the denial of their lawful entry would cause hardship. That's never been anybody's interpretation, though, right? Well, and we're not suggesting it should be. We're saying that that's actually absurd. Well, how, in our language here, we've got to use it in some way to create an anomaly. No, no, no, but it's the same exact subsection. It's subsection 212H. I know, but it's the subsection dealing with the waiver, not with the bar. The bar occurs in the same subsection. So how is it- All 212H. How is, how are those words interpreted now? Well, what we're saying is, if you interpret- Oh, no, don't give me if. Right now, people have to read this. So what do they take denial of admission meaning? What do you, the government- The government says that it means admission can be the lawful entry after inspection and authorization. It can also be the process of adjusting status when you're admitted as a lawful- Okay, so, but even so, Mr. Stanovsek, whether his admission was the first time he crossed the border or when he became an LPR, those have already happened. So do you interpret denial of admission here to mean the undoing of his adjustment? No, let me just clarify for a moment. We're not actually suggesting that this actually applies only to aliens overseas. I'm showing- No, I know that. I know that. I'm just saying, what happens today when somebody reads this? Well, what we're saying is, if we apply it in the way- I don't want to know the if. Today, the government would say that an alien in Mr. Stanovsek's position would be ineligible for the 212H waiver because he committed an aggravated felony after being admitted. Counsel, I'm sorry. By in his position, I mean a person in the U.S. who was adjusted. We would- So you say you never even look at these words? No, we're saying that the board's interpretation was reasonable to interpret adjustment of status as an admission. I'm sorry. Maybe I'm not understanding. I'm trying to- I think the answer is that when you have someone who has adjusted status, right, came in on a temporary visa and then adjusted status, became an LPR, and now has committed a crime and they try to kick him out, they will consider whether he has hardship or not. They won't categorically refuse to do that because he was adjusted status. Under the aggravated felony bar, if he adjusted status outside of those circuits that have already ruled on the issue, so, for example, this one- But if he didn't commit an aggravated felony- No, just- Just a portable for some other reason. No, then, of course, then, yeah, it's just an aggravated felony bar. But when you read this, you have to give some meaning to the words denial of admission. Exactly. That's the part you're pointing to on page 27. So what meaning do you give to that? Okay, first, I think I need to say that- What do you do right now? What does some bureaucrat- Sure, sure. A 212H application can only be applied for in conjunction with an adjustment of status here in the United States. So the admission that they're referring to is going to be the adjustment of status application. So, essentially, if you deny the admissibility of that alien here in the United States today, then that's the admission. Okay, this raises a different- I say these immigration laws make your head hurt because this guy has adjusted his status. Essentially, he can readjust his status. But it's a readjustment is what's going to happen because of his evils, then he's going to have to readjust. Is that what's happening? Yes. Aha. Yes. He can readjust status in order to essentially avoid the deportability raised by the aggravated felony. Okay, and at that point, so somebody like Mr. Stanovsek, if he wasn't barred otherwise, would be asking for the waiver, which would be a readjustment of status. The waiver itself is not. He has to apply for the waiver in conjunction with a new application to adjust status. Adjust status, okay. Which actually brings- Which then gets you back to the denial of admission, and that's where your argument is, that he couldn't be admitted because he's already here. Exactly. Except Mr. Stanovsek said he might be in Australia. Yes, so he can only be from abroad applying for this, but we know that can't be the right interpretation because in the bar itself, it references adjustment of status, which is a form of relief only available in the United States. So if you're going to read admission under the strict definition, you have to read it- So Mr. Stanovsek could not adjust status from Australia. No. He would have to come back. Well, he could consular process, which is a similar process, but overseas. But that actually- Let me ask you another thing about all these circuits. Sure. Because you've got a footnote about the Ninth Circuit, two cases, and I tried to track those to the ends of the earth, and I take it neither one has been argued, but neither have been decided? That's exactly correct. So we have no idea what they're up to. That's correct. And actually- Maybe you're disagreeing with each other. Because you did get one vote. You got Niemeyer's vote in one of these cases. Yes. But out of all of them, you just got one vote. I would just- That's okay. I mean, sometimes one person is right, you know. Let me ask this. Was your opposing counsel correct in describing the legislative history to be that the part that was plots into the language by the committee, the conference committee, was the second part rather than the first part, which is to say the part which allegedly is parallel to the status, or is it the part that- I think I actually understood him the other way, to say that it was the first admitted. That's what I thought. Yeah. So the words, an alien who has previously been admitted to the United States, were what was added, and that's what gives you the hook of the previously been admitted. Previously would have read, no waiver shall be granted in the case of an alien lawfully admitted for permanent residence, which arguably would include- They added the language which is at issue here. Yes. Is that right? That is correct. What- I think we can all agree- Well, you would say they did it- We're saying the language is ambiguous. That's our argument, is it's not clear if you read it in the context. What would be the- Your opposing counsel says they put it in there on purpose to make it more limited, right? You would have to come up with some other reason if we're trying to figure out what they were thinking in that little office in the capital. What could they have been thinking? We don't believe it's completely clear from the plain language itself. That's why we would say proceed to step two of Chevron and look at the board's interpretation. I think we all agree. We're sitting here trying to figure out what it says. That's not clear. That's not plain. We need to see what the board interpreted it as and the board concluded- Get where I am. If you have statutory language that is just clearly not what reasonable people would intend, that they were talking about 24-day or 36-day extensions and they inadvertently say 24 years, we all know that's wrong. If we sit here as a court and say, well, it says years, we're going to apply it, we're not acting as very judgmental judges. But if they said something that was close, like 42 instead of 24, and it said 42, we might just say, okay, it's 42. If they don't like it, they can amend it. To me, those are different ways that a judge can approach language that looks strange. It seems to me it would be helpful if we knew what- I think given the historical perspective of an admission being considered, putting someone in the equivalent place of knocking on the door to come in, that if you read it in that context, which is what the board suggests, read it in the context of the statute as a whole, but in this case particularly in the context of the waiver, not just the bar, then it only makes sense that it includes adjustment of status. But I would like to at this point also- You can't hypothesize some even screwy rationale for tossing in that language. Honestly, I agree that it is a confusing statute. The immigration laws get amended all the time. There's no reason why someone was just confused in order to enter that language. Staff, I guess my question, my reading was somebody reads the language and says, an alien lawfully admitted for permanent residence. Well, you know, there's several ways of getting to be admitted, so let's put in some words about previously been admitted. Now, it might have been a bad idea. If there had been a better staffer, they would have said, well, wait a minute, you've introduced a new ambiguity. But somebody might have looked at the unamended language and say, you know, that's ambiguous, let's fix it. What would the ambiguity- this is helpful to me. What would the ambiguity be that they thought might be there, which wasn't really there? That because there's several ways of being lawfully admitted. I guess when I might have been too stark, I've seen people do that to take something simple and complicated. Okay, that's helpful. Thank you. But it does go back partly to this sort of nunk-pro-tunkness. That is, does anybody think that an adjustment should be considered kind of nunk-pro-tunk? Obviously, your adversary doesn't want you to. I didn't know if that was something the government ever considered. It's not nunk-pro-tunk in the sense of somehow being retroactively admitted as a lawful permanent resident to the point of entry. But I would like to bring up at this point that it may be premature for this court to even consider this 212H admission issue at this point, because as Mr. Mosley admitted before the immigration judge, he had yet to file the application for the I-130, which is what Mr. Stanofsky is going to need in order to even apply to adjust status before the immigration judge, which is what he needs in order to apply for 212H. I confirmed yesterday that that application still has been... You want to have us not reach the issue? Well, I think it's an advisory opinion at this point, because even if it were to be remanded, he can't apply for the waiver at this point in time. But in all of these other cases, was there always? When I read them, I saw once or twice there was talk about I-130s, but in others there weren't. And I think, again, that's another issue that the courts haven't considered. Everyone has been so focused on the bar, they're sort of losing sight of the waiver itself. If he can't apply for the waiver... In the one case that you did, wasn't it Papazoglu that you kind of won in the sense that for whatever reason the government had already said we're not going to exercise our discretion? Yeah. Is there any particular reason that in that case they had already made that determination, whereas in these other cases they hadn't yet made it? Well, for example, in this case right here, they couldn't reach that because there was actually no application for a 212H waiver ever filed. And there can't be. If it gets remanded at this point, he hasn't filed the petition that's necessary to adjust. All right, but in Papazoglu's case, he had. The IJ actually made a ruling that even if he was statutorily eligible... Right, so in that case, the immigrant came out worse off because he had already made it and it was denied. In these other cases, in a certain sense, they're better off. They're in limbo, but they're in the country. But I think that is part of the problem with not considering the waiver in conjunction with the bar is that if he's not eligible for the... if he hasn't even met the preliminary requirements to apply for the waiver, why are we considering if he's barred from the waiver? We don't know that he's going to actually meet the beginning. I don't see as a strategic matter why. I guess it's not relevant why you're arguing that. Well, I think that essentially the court's going to be giving an advisory opinion. What you want is a decision from some court that goes your way so you can get to the Supreme Court. Alternatively, we've requested remand in the motion that you referenced earlier. It doesn't do you any good in that regard. Well, if you remand it without addressing the issue for it to go back to the board, for the board to specifically address Zhang as it was not raised by either opposing counsel or Homeland Security. We understand Zhang. We're not getting an adverse decision on the issue. It could go back. But I understand. Okay. Thank you. Let me address several of the points the government raised. First, Judge Rogers, on page 18 of the amicus brief, they explain the legislative history and how it admitted was indeed added. Now, I think it's important. I thought that I had it right, but I thought you said it. No, if I misspoke, I apologize. Secondly, the government's most recent suggestion that the issue isn't before this court is something obviously not raised by the government in its brief, not used by the Board of Immigration Appeals.  And what was arrived here is that the issue of statutory eligibility for a 212H waiver in the first place would be decided, and then if statutory eligibility was upheld, it would come back to the immigration court. So that legal issue is unquestionably and very clearly before this court. Do you secretly hope to lose one of these things and then go and argue it in the Supreme Court? Considering my track record before the Supreme Court in the Challenge case, I do not hope to lose this one. I'm just teasing. No, no, I understand, Your Honor. One other thing, though, about what you cite at page 18. It says, as originally enacted, the amendment applied to any immigrant who previously has been admitted to the United States, which means that wouldn't have been limited even to LPRs. Any tourist, whoever was admitted, would have been denied the waiver. So if you were a tourist when you were 20 and you were adjusted when you were 40 and committed your crime when you were 60, you would still be barred under the original language. So that a reason for doing it would have been to limit it to at least LPRs. But it limited, excuse me, to only admission as the procedure statutorily defined. And, you know, as Judge Cardozo said in the Fox opinion, if you don't have statutory definition, if you don't follow statutory definition. But am I wrong that as originally passed before the amendment, previously been admitted would have applied to more people than just LPRs? No, it would not. Only LPRs? No, it says immigrant. So only LPRs are immigrants? Right, correct. That's correct. So every LPR is an immigrant, every immigrant is an LPR? And what this specifically did is to limit those to the people who had achieved the status of alien lawfully admitted to permanent residence through admission and not adjustment. And we have clear statutory definitions under these circumstances. I just want to make sure that I've got that exactly right, that can people be admitted to the U.S. who are not LPRs, that is as a tourist admitted to the U.S.? Yes, they can be. But you're saying that the bar applied to any immigrant and that is identically equal to an LPR? Correct. Adjusted or non-adjusted? Correct. The other thing, the government makes, I submit, and we address this in our brief, in the reply brief at some length, about if you accept our position, then the waiver couldn't be, he couldn't show here. I mean, that is belied by the regulations that we cite at page 10 of our reply brief and by uniform practice. Adjustment applicants are assimilated to applicants for admission, so they have to pass the grounds of inadmissibility. That's what the statute, that's what the statutory language that the government is referring to. Is there any reason that, I guess it was Papazoglu already had gotten the denial of discretionary waiver? I think because his offense was a sexual abuse offense, it was something that the immigration judge might well have decided that they don't want to, they just want to get out of the way right here. We have a nonviolent white-collar criminal law. Does that also mean that the government raised it, that is, or said, because can the IJ independently just say, I'm going to deny you discretionary relief, or is it, you know, the Attorney General, the government in some way? I don't know the underlying facts of that case well enough. From the record, it doesn't make clear. Here the immigration judge quite clearly said that we'll resolve the legal issue. That, for example, is what happened in Martinez where I was counsel, and it went back and then the application was considered. Just one, I know my time is up, but if the court is considering a remand for the board to consider Zhang, I would urge that if you do make that remand, that you vacate the Board of Immigration Appeals decision as part of the remand. Because otherwise? Otherwise he wouldn't be able to come back. Okay, that was what I was thinking would happen. Okay, any other questions, judges? This is one you might have lots of questions on. All right, thank you, counsel. Thank you, Your Honor. You have attempted to enlighten us. Whether you have enlightened us or not, we'll have to see. But you have certainly both attempted, and we appreciate it.